## ROBERT W. ROBINSON

*v.*

## JOHN DAY FERGUSON *et al.*

1. TERMS OF COURT—*judgment and decree at term not authorized, void.* Where a term of the circuit court is held in March, in ignorance of the fact that the legislature had changed such term to the April following, all the judgments and proceedings had will be without warrant of law, and void.

2. But where a decree was rendered for the specific performance of a contract for the sale of land, at such a term of court, requiring the complainant to make payment of the price due, which he did before the next regular term, and the court, at the latter term, found that fact, and again decreed a conveyance to be made, under which the master executed a deed: *Held,* that the last decree was sufficient to uphold the deed and pass the title.

*J*

3. EVIDENCE—*to contradict record.* Where the record of a cause shows that a defendant appeared and answered the bill filed against him, his testimony can not be admitted to disprove the fact.

4. BURNT RECORDS—*decree establishing title.* Under the statute known as the " Burnt Record Act," where a petition is filed to establish and confirm the title to land, the court is authorized to decree in favor of the better title, in case of a dispute as to the ownership.

APPEAL from the Superior Court of Cook county; the Hon. SAMUEL M. MOORE, Judge, presiding.

This was a petition in chancery, under the Burnt Record Act, Rev. Stat. 841, sec. 16, filed by Robert W. Robinson, against John Ferguson, on the 14th day of July, 1873, in the Superior Court of Cook county, setting out the destruction of the public records of Cook county by fire, in the fire of October 8 and 9, 1871; that the complainant was the owner in fee simple of the west half of the north-west quarter of section 30, in township 40 north, range 14 east of the third principal meridian, situate in said county; that the original title deeds and instruments of writing relating to the title to the land had been lost or destroyed; that complainant's title was derived by pre-emption, made under the laws of the United States, and purchase of the land from the United States, on the 29th day of May, 1835, and possession thereof from that time until the present; that one John Ferguson claimed title to the land, which claim was null and void, and a cloud upon complainant's title. The petition prayed that the title to the land might be confirmed and established in the complainant, and that the claim of Ferguson might be declared to be void, and the cloud thereof removed.

The cause having been brought on to a final hearing upon the petition, answer and replication and proofs made, the court, by decree, found and determined that the title to the land was vested (as provided by the will of Ferguson) in the executors who were named, of Ferguson, in trust for the heirs

in the decree named, in fee simple, Ferguson having died pending the suit, and his executors having been made parties.

Robinson appealed from the decree.

In 1832, Robinson built a house upon the land, and afterward made other improvements, fencing and cultivating some 20 acres. On the 29th of May, 1835, he entered the land, at the land office at Chicago, under the Pre-emption Act of 19th June, 1834, and received from the register and receiver of the land office their certificates of his purchase and payment for the land. In 1837 or 1840, he left the land, and, as he testifies, placed it in the possession of George W. Snow, who owned the 80 east and the 80 west of it, and had ever since occupied it as the tenant of Robinson, until he (Snow) died, about 1870, leaving one John Lyon in occupancy, who has since held the possession as tenant of Robinson.

This, in brief, is the showing as to Robinson's alleged title.

The title to John Ferguson is deduced as follows:

1. A written agreement August 15, 1834, for conveyance by Robinson to H. S. Handy, on payments to be made, of the north-west half quarter, section 30, township 40 north, range 14 east of the third principal meridian.

2. An exemplified copy, from the files of the general land office at Washington, of the receiver's receipt of the purchase price of the land from Robinson, with Robinson's assignment of his interest in the land to Samuel Ressegne, purporting to be acknowledged before the register of the land office at Chicago.

3. The original patent from the United States to Samuel Ressegne for the land.

4. The special commissioner's deed of Isaac N. Arnold to Henry S. Handy, of the land, of date January 1, 1840, made pursuant to a decree in chancery for the conveyance thereof by Robinson and Ressegne to Handy, upon a bill filed for the specific performance of the agreement first above named.

5.   A mortgage from Henry S. Handy and wife to Ulysses B. Brewster and others, of the land, dated August 29, 1837, to secure the payment of a note for $5698.

6.   A sheriff's deed of Cyrus P. Bradley, sheriff, of the premises, to John Ferguson, made under a foreclosure proceeding by *scire facias* of the above mortgage, dated August 4, 1854.

7.   A quit-claim deed of the land from Laura W. Handy and Emma I. Spink, the sole heirs of Henry S. Handy, to Henry H. Handy, dated October 25, 1859.

8.   Quit-claim deed of the land, dated June 3, 1867, from Henry H. Handy and wife to John Ferguson.

Mr. EDWARD ROBY, for the appellant.

Messrs. SMALL & MOORE, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

There is exhibited by the proof a good chain of title to the premises in controversy in John Ferguson, brought down from the government, unless the objections which are taken thereto be sufficient to invalidate it.

It is objected to the validity of the deed of Isaac N. Arnold, special commissioner, that the decree under which it was made was void, because it was rendered at the March term, 1839, of the Cook county circuit court; that that term of the court was held without warrant of law.

The time of holding the spring term of the circuit court for Cook county was changed from the month of March to that of April, by an act of the General Assembly, approved March 2, 1839. The judge, in ignorance of the change having been made, held the court in March, 1839.

This court has heretofore decided that that term of the court was held at a time unauthorized by law, and that all the judgments and proceedings of the court at that term were without warrant of law, and void. The abstract of title in evidence, in

respect of the proceedings in the cause wherein this commissioner's deed was made, does show that a decree was entered March 23, 1839, that Robinson specifically perform the contract, and that he, together with Ressegne, execute to Handy a warranty deed for the land, provided Handy should, within three months, deposit with the clerk the amount due under the contract; but the abstract further shows that the records of the court set forth the payment of the money by Handy, and full compliance, on his part, with the terms of the contract, and that, on the 10th day of August, 1839, a decree was entered that the defendants in the suit execute and deliver a deed of the premises within ten days, and in default of such execution, Isaac N. Arnold was appointed a special commissioner to execute and deliver the deed.

Admitting the decree of March 23, 1839, to be void, we consider the decree of August 10, 1839, a sufficient decree for the conveyance by Robinson and Ressegne to Handy, of the land, and that it would uphold the commissioner's deed. The description of the land, in the contract with Handy, as the *north-west half quarter* of section 30, palpably means, in the light of the surrounding circumstances, the west half of the north-west quarter.

It is objected that this decree was void for another reason, that Robinson was never served with process, and never authorized any one to appear for him. He does so testify. But the record says that the defendants did appear and answer the bill; that replication was filed and testimony taken. We can not admit the statement of Robinson, to overcome this evidence furnished by the record, that he did appear.

The evidence of the decree and proceedings in that chancery suit consisted in the abstract of title which was introduced in evidence; but it seems to be conceded that the abstract was brought fully within section 29, of page 846, Rev. Stat. 1874, as well as within section 24, page 662, of

Session Laws of 1872, and so made thereunder competent evidence.

This commissioner's deed, then, of January 1, 1840, we regard as divesting both Robinson and Ressegne of all title and interest in the land which either of them had, and vesting the same in Henry S. Handy.

Various objections are taken to the sheriff's deed to Ferguson, of August 4, 1854, made under the judgment of foreclosure of the mortgage from Henry S. Handy to Brewster and others, as to its sufficiency to convey the title of Handy to Ferguson; but we shall not stop to consider the objections, regarding it as not material whether this deed was or not a valid conveyance of Handy's title, inasmuch as the heirs of Handy subsequently executed to Ferguson a quit-claim deed to the land, which amounted to a ratification of the sheriff's deed, and vested in Ferguson this Handy title.

Thus the title to the land was in Ferguson; but it is claimed by appellant that, if that be so, the title is barred by the Statute of Limitation; that he, by himself and his tenants, has been in the open, adverse actual possession and occupancy of the land from 1832 to the time of the commencement of the suit. Robinson himself does so testify, but that does not make it the fact, as seems to be assumed by appellant's counsel. His testimony is to be weighed, tested by examination as to its truthfulness, and to be received and acted upon only so far as it impresses the mind with belief in its truth.

There is much appearing to impeach the credit of appellant's testimony. He denies that he ever executed any paper writing to Ressegne, or ever had any business transaction whatever with him, although he admits an acquaintance with him, and that Ressegne was frequently at his house. The abstract shows that there were upon record various instruments of writing purporting to be executed by appellant to Ressegne—as, an assignment of the pre-emption certificate, a bond for a deed of the land, a power of attorney to act with

544      ROBINSON *v.* FERGUSON *et al.*      [Sept. T.

Opinion of the Court.

respect to other lands, and a warranty deed of the land in question.

The assignment, bond and power of attorney appear not to have been acknowledged, so that there is no proof of their execution by appellant, and should not be adverted to further than as a singular fact that so many forged paper writings to the same man should have got upon the record. There is no suggestion that the warranty deed was not acknowledged, and we take the execution of that as proved. There is in evidence an exemplified copy, from the general land office, of appellant's pre-emption certificate of purchase of this land, having appended to it an assignment from appellant to Ressegne. The natural conclusion would be, that the original pre-emption certificate would not have got upon the files of the general land office without having first been delivered by appellant to Ressegne.

Appellant's only explanation is, that the certificate was stolen out of his house.

Appellant testifies that he paid the taxes on the land as many as eighteen or twenty times, but does not produce a single tax receipt; says the tax receipts were stolen. The land was not taxable until 1840, and Mr. Kerfoot testifies that he, as agent for Ferguson, paid the taxes for 1852, and regularly every year afterward. So that appellant here stands contradicted as to the number of times he paid the taxes.

Appellant swears he was not served with process, and did not appear in the chancery suit for specific performance. The record contradicts him in this.

It is a remarkable fact that, with all appellant's pretended continuous care and efforts to guard and protect his right to this land, he should never have applied for his patent for it, as he admits that he did not. It appears that he had entered other lands, and obtained the patents for them. He says that for one piece of land he had lost the duplicate; that he wrote on to the general land office, and they sent him the patent; yet no measures were taken to secure the patent for this land,

of the value, as testified to, at the time of the commencement of the suit, of $120,000.

Appellant had a house which he had built-upon this land in 1832, and if he had supposed that he had a right to the land, and had intended to preserve and protect it in the future, he would naturally have stayed upon the land; but about 1838, he left the land, built another house upon a piece of land some eight miles distant, in 1840, and ever since has resided upon this latter place, it being ten miles distant from the court house in Chicago.

Appellant's testimony in this regard is, that Handy tendered him the money due upon the agreement for a deed; that he refused to accept it, and then, to use his own language, "that started the quarrel right off, and what they did about it after that, I don't know. I don't bother myself at all about it. I went on and made them arrangements with Snow, and made me another home here"—the place upon which he built the house in 1840. The alleged arrangement with Snow, as testified by appellant, was a verbal permission to Snow to use the land, rent free, he to keep the fence up good, and keep it for appellant. He admits that he had received no income from the land since 1840.

The conclusion which forces itself upon the mind, from the facts, is, that appellant accepted the decree for a specific performance of his contract with Handy for the conveyance of the land to the latter, and the commissioner's deed of January 1, 1840, in pursuance of the decree, conveying the land to Handy, as a final settlement of his rights as to the land; that he thereupon abandoned it, built him another house elsewhere, and never after had any care or concern with regard to the land, until about the time of filing the present bill. No steps ever having been taken by appeal or otherwise to reverse the decree, confirms this, that he acquiesced in the result of the suit.

On the part of the defendant, Mr. Kerfoot, engaged in the real estate agency in Chicago, testified that, in the year 1852,

35—78TH ILL.

546      ROBINSON *v.* FERGUSON *et al.*      [Sept. T.

Opinion of the Court.

he became the resident agent of John Ferguson, who resided in New York, to pay the taxes on and look after the land in controversy; that he afterwards, regularly every year, paid the taxes; that he often visited the land; that it lay between two parallel eighties belonging to George W. Snow, and that Snow took a written lease from him of the land in question at a dollar a year, so that, by throwing a fence across the ends of this one, the three eighties might be embraced within one enclosure, saving him the expense of fencing two lines of this eighty; that he thinks three, perhaps four, of such leases were executed, the first one being as early as 1854. Only one could be produced, which had been found among the papers of Mr. Snow. This one was a lease running from John Ferguson, by Kerfoot, his agent, to Snow, made in 1862, for five years from that time. Witness' copies of the leases were all burned. That Snow never would take a verbal arrangement in regard to the land, and always had a written lease, giving as the reason, that he might have authority for putting his tenant of his land in possession of this eighty. There would seem to have been a temporary fence on the land before any lease was made. The witness testified that Snow told him that the temporary fence that he had put up was one for his convenience; that he was occupying the land merely as a matter of convenience to himself; that he did not hold the land adverse to any one, and then took the lease from witness; that, under that lease, he put up a more permanent fence; that witness never heard of any claim of appellant to the land, until this bill was filed.

There is some criticism indulged in as to the witness' personal knowledge of the payment of the taxes, and as to his personally paying them, he having partners with him some of the time; but, from the whole evidence upon the subject, we are satisfied that the taxes were paid as above stated by him.

It is said that, at the time of taking the written lease from Ferguson, Snow was the tenant of appellant, and could not

thus betray the possession with which he had been intrusted by appellant, and that appellant's possession still continued; but the only proof of any such tenancy is the bare assertion of the appellant. That, we do not accept as proof of the fact. There is a possibility that Snow, while being the tenant of appellant, might have obtained these successive written leases for such a series of years from Ferguson, and never have made mention of appellant's claim to the land to Kerfoot, and the latter never have heard of any adverse claim, but it is too improbable for belief.

Downing was a tenant of Snow, of his two eighties, for some six years from 1857, living thereon, and, a portion of the time, making use of the premises in question. He testifies that he never heard of any claim of appellant to the land, but understood Ferguson was the owner, and was informed by Snow that Kerfoot had the agency of it, and witness, at one time, wishing to cut some small wood upon this eighty, was informed by Snow that Kerfoot would have to be seen about it. He thinks that he did go and see Kerfoot in reference to that matter.

Snow died in 1870, and his testimony could not be had. His proven acts tell most strongly against the testimony of the appellant.

Appellant's claim of adverse possession rests wholly upon his own naked statement, without the corroboration of one single circumstance, except in the testimony of the witness John Lyon. This witness did testify that he was in possession of this eighty, and had been ever since 1866, receiving it from Mr. Snow, who leased to him his (Snow's) two eighties; that the year after he went on, appellant stopped, as he was passing by, and, after some conversation, remarked that his name was Robinson, and that this eighty belonged to him, and was his property, and told the witness he could use it as long as he took good care of it; that the next time Mr. Snow came around, he told Snow about this Mr. Robinson, and that Robinson said the property belonged to him, and Snow re-

marked that it did, and that there were, afterward, interviews between appellant and Snow, in which appellant's ownership of the property was admitted. This testimony is affected by that of another witness, who testified to a conversation had with Lyon, in which Lyon told him that appellant had promised him (Lyon) eight or ten acres of the land, providing he won the suit; and Lyon admits that he once applied to Kerfoot for a lease, and was refused.

This is a claim of adverse possession, set up to bar a title to land of great value, which rests essentially, for proof of its existence, upon the mere unsupported assertion of the party in interest. The alleged adverse possession was of such a character that it was unknown to, and unsuspected by, the agent of the owner, who had it in charge to take care of and pay the taxes during a period of more than twenty years, and who often visited the land.

The testimony upon which it is based, considered in view of all else which appears by the record, is not sufficiently convincing in its force to be reposed on, and be acted upon as the truth. The claim, in our judgment, fails of having been made out.

The statute under which the proceeding was instituted, authorizes a decree in favor of the better title.

We are satisfied with the correctness of the decree of the court below, and it is affirmed.

*Decree affirmed.*